Me Adam, O. J.
— The reply interposed to the counter-claim contained in the defendant’s answer was returned, because the certificate to the jurat is signed “ Jennie Turner, notary public.” The complaint and answer were verified, and unless the reply contains a legal verification the defendants had the right to return it as an unverified pleading. The defendants place their objection upon the ground that Miss Turner, being a female, is ineligible to public office, and cannot therefore legally perform the functions of a notary. Miss Turner was appointed by the governor, and the appointment was confirmed by the senate. She has filed her official oath and has received her commission and is in possession of the office exercising its functions, and her right to the office cannot be questioned except in a direct proceeding brought by the attorney general in the name of the people, in which the notary may defend her right to the office. It cannot be determined in the collateral manner in which the defendants present their objection. When the appointing power can lawfully be exercised upon a particular office, the appointee, after qualifying and entering upon the office, becomes an officer defacto ; if not de jure, his acts are legal so far as the public is concerned, and his capacity or qualification for the office cannot be inquired into collaterally (People agt. White, 24 Wend., 520; People agt. Lambert, 76 K. Y., 220).
In The People agt. Dean (3 Wend., 438) it appeared that a minor was appointed a commissioner of deeds. The clerk of the common pleas refused to administer the oath of office upon the ground that the appointee, being a minor, was incapable of holding the office. The supreme court held: “ It is not the province of the officer to whom application is made to administer the oath of office to determine whether the person presenting himself is or is not capable of holding an office. It is the duty of such officer, on the production of the com *78 mission, to administer the oath. If an appointment has been improvidently made, there is a legal mode in which it may be declared void,” and a mandamus was thereupon ordered directing the clerk to administer the official oath.
Whether a female is capable of holding public office has never been decided by the courts of this state, and is a question about which legal minds may well differ. The constitution regulates the right of suffrage and limits it to “ male ” citizens (Const., art. 2, sec. 1). Disabilities are not favored and are seldom extended by implication, from which it may be argued that if it required the insertion of the term “ male ” to exclude female citizens of lawful age from the right of suffrage, that a similar limitation would be required to disqualify them from holding office. Citizenship is a condition or status, and has no relation to age or sex (Lectures of Prof. Dwight).
It may be contended that it was left to the good sense of the executive and to the electors to determine whether or not they would select females to office, and that the power being lodged in safe hands was beyond the danger of abuse. If, on the'other hand, it be seriously contended that the constitution, by necessary implication, disqualifies females from holding office, it must follow as a necessary consequence that the act of the legislature permitting females to serve as school officers (1880, chap. 9), and all other legislative enactments of like import removing such disqualification are unconstitutional and void. In this same connection it may be argued that if the use of the personal pronoun “ he ” in the constitution does not exclude females from public office, that its use in the statute can have no greater effect. The statute, like the constitution, in prescribing the qualifications for office, omits the word “ male,” leaving the question, whether female citizens of lawful age are included or excluded, one of construction:
I make these observations for the purpose of showing that the question whether females are eligible to public office in this state is one not entirely free from doubt, and should not therefore be decided where it arises, as it does here, *79 incidentally and collaterally. When the law officers of the state see fit to test the question in a direct proceeding brought for the purpose, it will be time enough for the courts to attempt to settle the contention. In such a proceeding the case of Robinson (131 Mass., 376, and that reported in 107 Mass., 604), holding that females cannot hold public office, and those decided in other states that they can hold office, may be examined and considered.
For the purpose of this motion, it is sufficient to decide that the reply was verified before a person holding the office of notary public, under a commission granted by the legally constituted appointing power ; that the defendants cannot, in a collateral proceeding, to which the notary is not a party, try the question of her eligibility to the office; that her acts are valid as to third persons and the parties to this record.
The motion to compel the defendants to accept the reply as a properly verified pleading will therefore be granted.